BAKER LIVESTOCK EXCHANGE, INC., Plaintiff and Appellee,

v.

Ted THOMPSON, Tommy Thompson, Thompson Livestock Company and St. Onge Livestock Auction, Inc., Defendants and Appellants.

No. 18359.

Supreme Court of South Dakota.

Considered on Briefs on April 28, 1994.

Decided Aug. 3, 1994.

Haven L. Stuck and Steven Oberg, of Lynn, Jackson, Shultz & Lebrun, Rapid City, for plaintiff and appellee.

Thomas W. Stanton of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for defendants and appellants.

PER CURIAM.

The facts underlying this appeal are principally the same as addressed in appeals 18356, 18357, 18358, 18360. Rather than restate all of the facts here, we direct the reader's attention to our combined opinion in those appeals. *See Stockmen's Livestock Exchange v. Thompson,* 520 N.W.2d 255 (S.D. 1994). The following additional facts are relevant to this appeal.

Thompsons were licensed as livestock dealers in Montana. Thompsons had designated Darrell Nickelson as their agent in Montana in 1987 and 1988. The official list of Montana licensed dealers and their agents specified that Nickelson was an agent for Thompsons.

On June 28, 1988, Bill Barnes attended a cattle auction at Baker Livestock Auction. Barnes purchased cattle for Thompsons. Thompsons paid for the cattle Barnes purchased.

Prior to the next sale, Bill Almy, the owner of Baker Livestock, contacted Barnes to find out if he planned to attend the next sale. Barnes indicated that he would try to be there. On the sale day, Almy did not see Barnes but he did notice Nickelson. He testified that he asked Nickelson if he was there in place of Barnes. Nickelson nodded and said "yes." Nickelson purchased cattle.

The next day Almy called Thompsons and expressed concern because the cattle were still at the auction lot. Thompsons made arrangements and the cattle were trucked away shortly thereafter. The next week, Nickelson purchased more cattle at Baker Livestock and they were shipped to St. Onge Livestock.

On July 26, 1988, Nickelson again purchased livestock at Baker Livestock Auction. He designated "Aladdin Ranch—Darrell Nickelson" as the buyer and signed with his own name. The cattle were shipped to St. Onge Livestock. Nickelson paid for the cattle with a check drawn on an account in the name of Aladdin Ranch, Inc. This check for $41,935.73 was returned because of insufficient funds.

Baker Livestock Auction sought payment from Thompsons. Thompsons refused to pay and denied that Nickelson was acting as their agent. Baker Livestock Auction filed a complaint with the Montana Livestock Department. The Montana Livestock Department conducted an investigation and found that Nickelson was not acting as Thompsons' agent. The charges against Thompsons were dismissed.

In July 1989, Baker Livestock filed a lawsuit against Thompsons. The case was tried to a jury in late January 1993. The jury

returned a verdict in favor of Baker Livestock in the amount of $41,935.73. Thompsons appeal.

## DECISION

## THE TRIAL COURT'S JURY INSTRUCTIONS CORRECTLY STATED THE LAW AND DID NOT MISINFORM THE JURY.

Thompsons contend the jury erroneously concluded that Nickelson was acting as Thompsons' agent because the "trial court essentially disregarded [the] evidence and led the jury to believe, through the instructions, that Aladdin Ranch, Inc. was nothing more than Nickelson's alter ego...."

■ This Court reviews jury instructions as a whole and will not find them erroneous if they correctly state the law and inform the jury. *Cody v. Jones,* 502 N.W.2d 558 (S.D. 1993) (citing *Larson v. Kreiser's, Inc.,* 472 N.W.2d 761, 762 (S.D.1991)). The party seeking to set aside the verdict must prove not only error in the instructions, but "prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict." *Darrow v. Schumacher,* 495 N.W.2d 511, 518 (S.D. 1993); *Stormo v. Strong,* 469 N.W.2d 816, 825 (S.D.1991). Further, the party alleging error "must show prejudicial error affirmatively from the record." *Shamburger v. Behrens,* 380 N.W.2d 659, 661 (S.D.1986).

■ Thompsons have not specifically pointed out any jury instruction which was erroneous. Instead, they are concerned by the way the jury instructions depict Nickelson and Aladdin Ranch. For example, jury instruction number 12 read, in part, as follows:

The Defendants Ted Thompson, Tommy Thompson, Thompson Livestock Company, and St Onge Livestock Auction, Inc., are sued as the principal and the plaintiff claims that Darrell Nickelson/Aladdin Ranch, Inc. was acting as their agent at the time of the purchase at Baker, Montana on July 26, 1988.

Thompsons contend that by depicting Darrell Nickelson and Aladdin Ranch, Inc. as "Darrell Nickelson/Aladdin Ranch, Inc.", the trial court was improperly leading the jury to believe that the two were the same.

Thompsons ignore the trial court's jury instruction which provided:

The fact that one of the parties to this action is a corporation is immaterial. In the eyes of the law, the corporation is an individual party to the lawsuit and all parties are entitled to the same impartial treatment.

Whether a party to the action or not, a corporation shall be considered a separate legal entity.

In this case, Baker Livestock was trying to prove that Nickelson was acting as Thompsons' agent. Thompsons made much of the fact that Nickelson specified on his purchase papers that he was buying the cattle for Aladdin Ranch. Baker Livestock produced testimony which showed that it was not uncommon for a livestock auction to use an agent, even a corporation, to purchase cattle for resale at its place of business. Baker Livestock argued that even if Nickelson was purchasing the cattle in the name of Aladdin Ranch, he may still have been acting as an agent for Thompsons. They argued that if the jury concluded that either Nickelson *or* Aladdin Ranch, Inc. was acting as an agent for Thompsons, then Thompsons were liable for the price of the cattle.

The jury instructions, viewed as a whole, correctly state the law and inform the jury. Thompsons have not shown any prejudicial error as a result of the jury instructions.

## THE TRIAL COURT DID NOT ERR IN EXCLUDING THE REPORT OF THE MONTANA DEPARTMENT OF LIVESTOCK.

The Montana Department of Livestock investigated Baker Livestock Auction's complaint against Thompsons and concluded that no agency relationship existed between Thompsons and Nickelson. Thompsons sought to have the Montana Livestock Department's report admitted into evidence. Baker Livestock objected and the trial court denied admission of the report. The objection and argument over the report took place off the record.

Thompsons argue that the trial court should have admitted the report. They claim Baker Livestock objected to the report as hearsay and because it "invaded the province of the jury." Thompsons then explain that the report was admissible under the business records exception to the hearsay rule and that the ultimate issue rule does not apply in civil cases. Baker Livestock contends that it objected to the report as hearsay, as a violation of the ultimate issue rule, as overly prejudicial, and as irrelevant.

■ The parties disagree over what objections Baker raised. Because the matter was discussed off the record, this Court has no way of knowing what the objections were or what rationale the trial court actually applied to exclude the report. The ultimate responsibility for presenting an adequate record on appeal falls upon the appellant. *Baltodano v. North Central Health Services*, 508 N.W.2d 892 (S.D.1993) (citing *Pearson v. Adams*, 279 N.W.2d 674, 676 (S.D.1979)).

"The trial court's evidentiary rulings are presumed correct and will not be reversed unless there is a clear abuse of discretion." *Darrow*, 495 N.W.2d at 521; *Cody*, 502 N.W.2d at 565.

■ Thompsons argued that the report was admissible for at least two reasons. In fact, the report may have been admissible for hundreds of reasons. However, regardless of how many reasons there are to admit an exhibit, it must be denied if it is inadmissible for any one reason. The trial court found at least one such reason to exclude the report. This record does not disclose that reason. The trial court may have simply concluded that the probative value of the report was substantially outweighed by its prejudicial effect. SDCL 19-12-3 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Thompsons have failed to overcome the presumption in favor of the trial court's evidentiary ruling.

The trial court is affirmed in all respects.

MILLER, C.J., and WUEST and SABERS, JJ., and JAMES W. ANDERSON, Circuit Judge, concur.

HENDERSON, J., disqualified.

JAMES W. ANDERSON, Circuit Judge, for AMUNDSON, J., disqualified.